IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| RUDY STANKO, ) | |
| ) | 8:06cv290 |
| Plaintiff, ) | |
| ) | MEMORANDUM AND ORDER |
| vs. ) | |
| ) | |
| WARDEN PATTON, et al., ) | |
| ) | |
| Defendants. ) | |

This matter is before the court for initial review of the civil rights complaint filed pursuant to 42 U.S.C. § 1983 by the plaintiff, Rudy Stanko, a pretrial detainee housed in the Douglas County Correctional Center ("DCCC").

**PLRA**

Because the plaintiff is incarcerated, the Prison Litigation Reform Act ("PLRA") applies to this case. The PLRA requires the court to screen civil rights complaints brought by prisoners (including pretrial detainees[1]), establishes criteria governing dismissal of prisoner complaints, and restricts remedies and procedures in prisoner litigation. See, e.g., 28 U.S.C. § 1915A, which directs the court to screen prisoner complaints:

> (a) Screening.--The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
>
> (b) Grounds for dismissal.--On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint--
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

---

[1] 28 U.S.C. § 1915(h) defines "prisoner" as "any person incarcerated or detained in any facility who is **accused of**, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." (Emphasis added.)

1

**Class Action**

The plaintiff purports to bring this case as a class action on behalf of himself "and similar situated pre-trial detainees and prisoners," for monetary, injunctive and declaratory relief. However, the plaintiff may not bring a class action. As a pro se litigant, the plaintiff may not represent other parties. "Every court that has considered the issue has held that a prisoner proceeding pro se is inadequate to represent the interests of his fellow inmates in a class action." Craig v. Cohn, 80 F. Supp.2d 944, 946 (N.D. Ind. 2000) (citations omitted). Accord Oxendine v. Williams, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit this imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action."). See also Fymbo v. State Farm Fire and Cas. Co., 213 F.3d 1320, 1321 (10th Cir. 2000): "A litigant may bring his own claims to federal court without counsel, but not the claims of others." Accord Allnew v. City of Duluth, 983 F. Supp. 825, 831 (D. Minn. 1997). Therefore, the class action aspects of this suit are dismissed. See 28 U.S.C. § 1915A(b)(1).

**First Amendment - Food**

The plaintiff states that he is an "ordained member of the Church of the Creator," and he protests the denial of "religious meals" at the DCCC. According to the plaintiff, various defendants violated the plaintiff's "First Amendment and equal protection rights when they refused [his] religious diet of fresh fruit and nuts ...." Religious prisoners may be entitled under certain circumstances to dietary accommodations consistent with the religious beliefs and practices of their denominations. See generally O'Lone v. Estate of Shabazz, 482 U.S. 342 (1987) (considering how to achieve appropriate balance of valid penological objectives and prisoners' free exercise rights). On the other hand, individual prisoners are not entitled to characterize their food preferences as religious tenets and demand special privileges under the guise of the First Amendment.[2] As the plaintiff has

---

[2]In fact, the website for the Church of the Creator, while quite informative about every other aspect of the organization's beliefs, states not one word about nuts, fruit or other food. Cf. Cutter v. Wilkinson, 125 S.Ct. 2113, 2124 (2005) (discussing the Religious Land Use and Institutionalized Persons Act): "Further, prison officials may appropriately question whether a prisoner's religiosity, asserted as the basis for a requested accommodation, is authentic."

alleged no facts which suggest either that the Church of the Creator is a bona fide religion or, more important, that the consumption of nuts and fruit is a genuine dietary requirement of the religion, the plaintiff's First Amendment claim based on the denial of fruits and nuts is dismissed as frivolous.   See 28 U.S.C. § 1915A(b)(1).

### First Amendment - Chaplain

The plaintiff also protests the presence of a chaplain at DCCC hired "with government money."  According to the plaintiff, "the hiring of Chaplain Heatly by the State is a violation of the State preferring one religion over another and a violation of the separation between church and State."  It appears from the complaint that the plaintiff bases his standing to challenge the expenditure of public funds in that respect on his status as a prisoner at DCCC, rather than as a taxpayer.[3]

A plaintiff must have standing in order to bring a claim in federal court.  The concept of standing derives from the "case or controversy" language in Article III, Section 2, of the United States Constitution.  See generally Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992):  "One of those landmarks, setting apart the 'Cases' and 'Controversies' that are of the justiciable sort referred to in Article III – 'serv[ing] to identify those disputes which are appropriately resolved through the judicial process,' ... – is the doctrine of standing."

In order to establish standing, a plaintiff must demonstrate three components, none of which the plaintiff has shown.  "First, he must demonstrate 'injury in fact' – a harm that is both 'concrete' and 'actual or imminent, not conjectural or hypothetical.' .... Second, he must establish causation – a 'fairly ... trace[able]' connection between the alleged injury in fact and the alleged conduct of the defendant .... And third, he must demonstrate redressability –  a 'substantial likelihood' that the requested relief will remedy the alleged

---

[3]The plaintiff purports to challenge state expenditures.  However, "generalized grievances" shared in substantially equal measure by all or a large class of citizens are not the kinds of harms that ordinarily confer taxpayer standing.  Federal Election Commission v. Akins, 524 U.S. 11, 23 (1998).  But see Booth v. Hvass, 302 F.3d 849 (8th Cir. 2002) (Equal Protection Clause is not a specific constitutional limit on state spending powers, although the Establishment Clause may be), cert. denied, 537 U.S. 1108 (2003).  As for standing as a local taxpayer, the plaintiff is not a taxpayer of Douglas County, Nebraska.  He is temporarily in Douglas County only as a pretrial detainee placed at the DCCC awaiting trial on federal charges.

injury in fact ...."  <u>Vermont Agency of Natural Resources v. U.S. ex rel. Stevens</u>, 529 U.S. 765, 771 (2000) (citations omitted).

The plaintiff does not allege that he has suffered any injury of his own, such as the unavailability of religious counseling for his own religious denomination.  Rather, he appears to have taken a personal dislike to Chaplain Heatly, and he objects to the expenditure of public funds for the employment of that individual to minister to *other* prisoners and detainees at DCCC.  The plaintiff has failed to allege that he has sustained, or is in danger of sustaining, some direct, real and immediate, and not conjectural or hypothetical, injury as a consequence of the alleged constitutional wrong.  <u>City of Los Angeles v. Lyons</u>, 461 U.S. 95, 101-02 (1983).  In the absence of any injury in fact, the plaintiff lacks standing to complain about the employment of Chaplain Heatly at DCCC, and for that reason and pursuant to 28 U.S.C. § 1915A(b)(1), his claim is dismissed.

**First Amendment - Access to the Courts**

Finally, the plaintiff contends that he is entitled to "daily access to the law library and the legal tools of the legal profession, which includes but not limited to: copy machine, hard back law books, files with separators, word processor, Lexis Nexis or a similar internet program, and a telephone without prohibited and excessive costs." The plaintiff misconstrues the scope of his constitutional right of access to the courts.  See, e.g., <u>Cody v. Weber</u>,  256 F.3d 764, 767-68 (8th Cir. 2001):

> The general framework for analyzing access to courts claims brought by inmates is set forth in <u>Lewis v. Casey</u>, 518 U.S. 343 ... (1996).  <u>Lewis</u> explains and narrows the Supreme Court's earlier holding in <u>Bounds v. Smith</u>, 430 U.S. 817 ... (1977), concerning the nature of the right and the requirements for relief.  In the context of an allegedly inadequate prison law library, the Court determined that the right of access to the courts guarantees an inmate the ability to file lawsuits that directly or collaterally attack the inmate's sentence or that challenge the conditions of the inmate's confinement, but it does not extend to the right to "discover grievances" or to "litigate effectively once in court." 518 U.S. at 354-55 .... Moreover, an inmate who alleges an access violation is required to show actual injury.  <u>Id</u>. at 349....

See also <u>Higgins v. Carpenter</u>, 258 F.3d 797, 799-800 (8th Cir. 2001) (citations omitted) (touchstone of scope of inmates' right of access to courts is whether inmates have

4

"reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement;" under Lewis v. Casey a prison system does not have to provide maximum or even optimum level of access to courts). Accord Cody v. Weber, 256 F.3d at 770 (inmates have no constitutional right of access to a typewriter, and the plaintiff failed to establish actual injury resulting from confiscation of his personal computer and denial of access to the data stored on his computer disks). Thus, the plaintiff's claim based on denial of "daily access to the law library and the legal tools of the legal profession, which includes but not limited to: copy machine, hard back law books, files with separators, word processor, Lexis Nexis or a similar internet program, and a telephone without prohibited and excessive costs" is dismissed as frivolous. See 28 U.S.C. § 1915A(b)(1).

### Damages

Among the forms of relief requested in the complaint, the plaintiff lists compensatory damages. However, the PLRA limits the recovery of damages for emotional distress, and the plaintiff alleges no physical injury. See 42 U.S.C. § 1997e(e): "Limitation on recovery. No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." Thus, the availability of compensatory damages to a prisoner such as the plaintiff is limited by the PLRA.

### Exhaustion of Administrative Remedies

Under 42 U.S.C. § 1997e(a), a prisoner may not bring an action challenging prison conditions pursuant to 42 U.S.C. § 1983 until after available administrative remedies have been fully exhausted. See Porter v. Nussle, 534 U.S. 516, 524 (2002) ("Once within the discretion of the district court, exhaustion in cases covered by § 1997e(a) is now mandatory"); Booth v. Churner, 532 U.S. 731, 733-34 (2001) (exhaustion is mandatory). See also Lyon v. Del Vande Krol, 305 F.3d 806, 808 (8th Cir. 2002): "The Prison Litigation Reform Act of 1996 (PLRA) amended 42 U.S.C. § 1997e(a) to require that inmates who have civil rights claims must first exhaust all administrative remedies before bringing an action under § 1983. See Booth v. Churner, 532 U.S. 731, 733-34 ... (2001). This is true even though relief of the sort that the plaintiff is seeking is not available through the

5

administrative procedures that are available.  Id. at 737-41...."

An inmate's subjective beliefs concerning the futility of submitting grievances is insufficient to avoid the exhaustion requirement of § 1997e(a). Chelette v. Harris, 229 F.3d 684, 688 (8th Cir. 2000), cert. denied, 531 U.S. 1156 (2001); Lyon v. Vande Krol, 305 F.3d 806, 809 (8th Cir. 2002).   See also Walker v. Maschner, 270 F.3d 573, 577 (8th Cir. 2001): "Booth makes it plain that exhaustion is required where administrative remedies are available even if the available administrative remedies do not provide the precise, or full, relief sought."

Dismissal is required when an inmate has not exhausted administrative remedies as to all claims before filing a lawsuit.  Johnson v. Jones, 340 F.3d 624, 627 (8th Cir. 2003). If exhaustion was not completed at the time of filing, dismissal is mandatory.  Id.  The plaintiff states that he arrived at the DCCC on the evening of March 3, 2006 (filing no. 1 at 2).  He filed his complaint in this action on March 27, 2006.  Taking judicial notice of the court's records in other cases, the DCCC's exhaustion procedures are set forth in the *Inmate Rules and Regulations Handbook*, Chapter XI, §§ 11.1, *et seq.* which describe a two-step grievance process including an appeal to the Chief Deputy of Corrections.  The plaintiff does not allege that he exhausted his administrative remedies, and, again taking judicial notice of the court's records in other cases, he could not have completed the grievance procedures at DCCC, including the appeal which is an integral component of the exhaustion process, within the 24 days between his arrival at the DCCC and the date he filed his complaint.  Accordingly, his claims must be dismissed.[4]

THEREFORE, IT IS ORDERED:

1.     That, based on 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act, because the plaintiff's claims are frivolous and because he failed to exhaust his administrative remedies, the plaintiff's complaint and this action are dismissed, without prejudice, prior to service of process on any defendant; and

2.     That a separate judgment will be entered in accordance with this

---

[4] However. a dismissal pursuant to 42 U.S.C. § 1997e(a) is without prejudice. Castano v. Nebraska Dept. of Corrections, 201 F.3d 1023, 1025 (8th Cir.), cert. denied, 531 U.S. 913 (2000).

6

Memorandum and Order.

April 3, 2006.                    BY THE COURT:

                                                      s/ *Richard G. Kopf*
                                                     United States District Judge