IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| RUDY STANKO, | ) | |
| --- | --- | --- |
| | ) | 8:06cv290 |
| Plaintiff, | ) | |
| | ) | MEMORANDUM AND ORDER |
| vs. | ) | |
| | ) | |
| WARDEN PATTON, et al., | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on remand from the United States Court of Appeals for the Eighth Circuit (see filing no. 8). The Eighth Circuit has vacated the judgment in which I dismissed the complaint filed by the plaintiff, Rudy Stanko, at that time a federal pretrial detainee. I dismissed the complaint prior to service of process on any defendant, pursuant to 28 U.S.C. § 1915A(b)(1) and 42 U.S.C. § 1997e(a) of the Prison Litigation Reform Act ("PLRA"), as frivolous. However, the Eighth Circuit has determined that, although facing many obstacles, the plaintiff's complaint is not frivolous, and service of process is mandated. On remand, this court is to reinstate the plaintiff's first and second causes of action (denial of access to legal resources for self-representation in the plaintiff's criminal proceedings) and the plaintiff's third cause of action (denial of free exercise of religion relating to consumption of fruit and nuts).

I will order service of process. However, in the interim while this case was on appeal, the plaintiff transferred to the custody of the United States Bureau of Prisons. Therefore, any claim for prospective injunctive relief in this case has become moot. See Randolph v. Rodgers, 170 F.3d 850, 856-57 (8th Cir. 1999). When, as in this case, "an inmate has been transferred to another institution, his claim for injunctive relief against the warden of the first prison to improve the former prison's conditions is moot." Id. at 857, citing Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985). The plaintiff sought only injunctive relief.

For that reason and because there are other matters which will require clarification, the plaintiff is granted leave to amend his complaint within forty (40) days of the date of this

1

Memorandum and Order.   Service of process will not be delayed, and if an Amended Complaint is filed after summons forms have issued, counsel for the defendants will be notified through the court's CM/ECF electronic filing system.

## Denial of Access Claims

One immediate question which the plaintiff should address if he amends his complaint is precisely what right of access to the courts he is asserting.  The Eighth Circuit surmises that Mr. Stanko claims "the defendants violated his constitutional right to defend himself in his federal criminal trial by limiting his access to legal materials."[1]  However, it is not at all clear that a pretrial detainee who knowingly and voluntarily waives appointed representation by counsel in a criminal proceeding retains any such right.

The U.S. Supreme Court has observed that it has never recognized a pro se criminal defendant's right to law library access under the Sixth Amendment.  Kane v. Garcia Espitia, 126 S.Ct. 407, 408 (2005).  Kane summarily and unanimously reversed a Ninth Circuit decision granting habeas corpus relief to a self-represented defendant who lacked access to a law library while in jail preparing for a state trial.  As the Court pointed out in Kane, the decision in Faretta v. California, 422 U.S. 806 (1975), which clearly established a defendant's Sixth Amendment right to self-representation, said "nothing about any specific legal aid that the State owes a pro se criminal defendant."  Kane v. Garcia Espitia, 126 S.Ct. at 408.

At least five U.S. Courts of Appeal have held that when pretrial detainees waive the right to counsel, they also waive any right to access to a law library.  At a minimum, any right of access to legal resources owed by anyone to pretrial detainees is satisfied when the presiding courts merely **offer** such detainees appointed counsel or standby counsel. See, e.g., United States  v. Byrd, 208 F.3d 592, 593 (7th Cir. 2000) ("when a person is

---

[1] See filing no. 8 at 2: "In counts one and two of his complaint, Stanko asserts that the defendants violated his constitutional right to defend himself in his federal criminal trial by limiting his access to legal materials. Stanko alleges that the defendants denied him access to the law library and ignored his requests "to be on equal footing as his adversaries, i.e., to have immediate access to copy machines at the paper cost, his personal files with separators, word processor, lexis nexis or a similar internet program." Complaint at 3–4."

offered appointed counsel but chooses instead to represent himself, he does not have a right to access to a law library .... The rule is that he has the right to legal help through appointed counsel, and when he declines that help, other alternative rights, like access to a law library, do not spring up."). See also United States v. Cooper, 375 F.3d 1041, 1051-52 (10th Cir. 2004):

> Prisoners have a fundamental constitutional right of access to the courts, and must be provided with "adequate law libraries or adequate assistance from persons trained in the law." Bounds v. Smith, 430 U.S. 817, 828 ... (1977). We have held that availability of law libraries is only one of many constitutionally acceptable methods of assuring meaningful access to the courts, and pretrial detainees are not entitled to law library usage if other available means of access to court exist .... It is well established that provision of legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library. See Lewis v. Casey, 518 U.S. 343, 350-51 ... (1996) .... **When a prisoner voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding, he is not entitled to access to a law library or other legal materials** ....

(Emphasis added; citations omitted.)  Accord Degrate v. Godwin, 84 F.3d 768, 769 (5th Cir. 1996) (inmate had no constitutional right of access to law library to prepare pro se defense once he rejected assistance of court-appointed counsel); United States v. Sammons, 918 F.2d 592, 602 (6th Cir. 1990) (the offer of court-appointed counsel satisfies the constitutional obligation to provide legal assistance; "by knowingly and intelligently waiving his right to counsel, the appellant also relinquished his access to a law library"); United States v. Chatman, 584 F.2d 1358, 1360 (4th Cir.1978) (any obligation to provide the defendant-detainee access to the courts was satisfied by offering him the assistance of counsel which he declined).

Even the Eighth Circuit has previously expressed skepticism about the Sixth Amendment "right" Mr. Stanko appears to assert.  At a minimum, the Eighth Circuit has repeated held that any right of access to legal resources and materials asserted by a pretrial detainee, if such right exists, is wholly satisfied by assistance from standby counsel or similar source provided by the detainee's presiding court.  See, e.g., United States v. West, 557 F.2d 151, 152-53 (8th Cir. 1977):

> About a month before his trial, West requested access to a law library, a telephone and a typewriter. Neither of the local facilities for the incarceration

> of federal prisoners was equipped with a law library. West was not taken to a law library because he was considered both an escapee and a suicide risk. However, the appointed "standby" attorney visited West on seven separate occasions and made himself available to do any research West desired. West refused the offers and insisted that he should do research himself if he was going to be the one to try the case. The attorney did provide West with copies of two cases from the University of Arkansas Law Library that he had requested. Arrangements were made so that West was able to spend an afternoon in the United States Marshal's office conferring with his "standby" counsel and calling potential witnesses on the government F.T.S. (FTS) telephone line. We are unable to agree that West was denied an adequate opportunity to prepare his defense. The Supreme Court has recently held that the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law .... This requirement has been satisfied since West did have opportunity to interview witnesses by telephone and an attorney was made available to obtain legal materials for him.

(Citations omitted.)  See also United States v. Knox, 950 F.2d 516, 520 (8th Cir. 1991):

> Knox claims a due process violation because the district court denied him access to a law library. This claim is without merit. Pro se defendants have a right of access to "'adequate law libraries or adequate assistance from persons trained in the law.'"... Knox refused his standby attorney's offer of assistance, saying he wanted to do the legal research himself .... [A]fter Knox threw away legal materials supplied by standby counsel, he was offered the opportunity to use the district court's law library. He refused, without ever telling the district court what he wanted to research and how much time it would take. As West makes clear, the district court was not required to accede to Knox's unsupported, open-ended, unreasonable requests.

(Citations omitted.) See also United States v. Kind, 194 F.3d 900, 905 (8th Cir. 1999):

> In this case, Kind rejected society's most fundamental guarantee of a fair trial – the services of appointed counsel and all the resources at counsel's command to prepare and implement the best possible trial defense. After Kind was permitted to represent himself, he complained to the district court about limited access to legal materials at the state institutions where he was being detained. The court offered the assistance of stand-by counsel, and there is nothing in the record suggesting that stand-by counsel refused to assist Kind in his preparation for trial. The record shows that, while Kind was incarcerated in several state facilities prior to trial, he had access to legal materials in at least two of those locations.  Kind has totally failed to show that his defense at trial was prejudiced by any lack of legal materials. We have serious doubts whether a pretrial detainee who exercises his

constitutional right to represent himself at trial thereby becomes entitled to legal resources over and above what are provided to the general inmate population .... But in any event, it is clear that the district court carefully protected Kind's right to a fair trial after he foolishly decided to represent himself. The right to due process requires no more.

(Citation omitted.)

When he filed his complaint on March 27, 2006, Mr. Stanko was a federal pretrial detainee facing a charge of violating 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) in Case No. 8:05cr93, United States v. Rudolph George Stanko, before Chief Judge Joseph F. Bataillon. As of March 6, 2006, the plaintiff had been remanded to the custody of the U.S. Marshal for violating his terms of pretrial release, and the Marshal placed him at the Douglas County Correctional Center ("DCCC"), where, in this case, the plaintiff claims that he was denied access to a law library. However, in Case No. 8:05cr93, the plaintiff had ceased representing himself as of January 24, 2006, and retained counsel, David Domina, Esq., represented the plaintiff as his attorney in Case No. 8:05cr93 until conclusion of all proceedings in the district court.

The violation of pretrial release in Case No. 8:05cr93 which caused the plaintiff's pretrial detention resulted in an indictment opening Case No. 8:06cr50, United States v. Rudolph George Stanko, in which the plaintiff faced a felony charge of misuse of a social security number, 42 U.S.C. § 408(a)(7)(B). From March 6, 2006 until September 7, 2006, the plaintiff represented himself in Case No. 8:06cr50. On March 6, 2006, Chief Judge Bataillon appointed Joseph Gross as standby counsel. A month later, attorney Roger I. Roots entered the case as pro bono standby counsel. At all times thereafter through the conclusion of proceedings in the district court, the plaintiff had standby counsel in Case No. 8:06cr50.

In addition to standby counsel in Case No. 8:06cr50, Chief Judge Bataillon entered the following standing order in the case, providing Mr. Stanko with regular and frequent access to the courthouse law library:

> The court finds that the defendant's library access should be increased. The court further finds that there is no local facility that can adequately accommodate the defendant's request for law library access and

5

>his request for access to his legal papers. The court has made arrangements with the U.S. Marshal to transport the defendant to the detention facility of the Roman Hruska Courthouse at least three times per week. The defendant will be given access to all of his legal papers in a holding cell dedicated to his legal papers. The cell will have a desk and writing materials. The defendant may request the U.S. Marshal to provide law books from the court's library. Defendant's requests for law books on hand in the court's library will be provided to the defendant upon the condition that he does not deface, destroy, or damage said books. In the event the defendant fails to properly care for any legal books or materials, the court will withhold further materials.
>
>The court finds that beginning Monday, September 11, 2006, the U.S. Marshal should obtain the defendant's legal papers (approximately one box) from the defendant's current jailer along with other legal materials from his previous attorneys of record and to hold those materials along with appropriate writing materials in a designated detention cell in the Roman Hruska Courthouse. The defendant will be given access to such materials when he is transported to the Courthouse for purposes of legal research at least three days per week. The U.S. Marshal has agreed to provide the defendant photo copies of any filings he may have in discovery or pleadings limited to 200 pages ....

(Filing no. 120, entered on 9/7/06 in Case No. 8:06cr50.)

In subsequent orders, Chief Judge Bataillon instructed the U.S. Marshal's Service to provide Stanko with a box to store his legal materials while conducting research in the federal courthouse, clarified that the Marshal had agreed to transport Stanko to the courthouse each day that a member of the Marshal's staff made a trip to the DCCC (usually daily) but in no event less frequently than three days per week, that Stanko should store his files and books at the federal courthouse rather than disobey DCCC regulations concerning bringing contraband into the jail, that Stanko had a standing offer to utilize the courthouse library for as much as six hours per day for three to five days per week, that Stanko had permission to keep his legal papers and books in the federal courthouse and return to them each day, that envelopes, postage and photocopies requested by Stanko should be obtained from standby counsel, and that standby counsel would assist Stanko in research. (See, e.g., filing nos. 130, 145, 164, 186, 237 and 255 in Case No. 8:06cr50.)

In the circumstances, I question whether the plaintiff relies on the Sixth Amendment as support for his first and second claims. Perhaps he believes that the First and/or Fifth

Amendment(s) provide the source for the right he seeks to enforce.  If so, ideally he should clarify that issue.  In drawing from a variety of sources, the Supreme Court held in <u>Bounds v. Smith</u>, 430 U.S. 817, 828 (1977), that, with respect to civil rights suits by *convicted* prisoners, "the fundamental constitutional right of access to the courts requires prison authorities to assist inmates in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law ...."  The Supreme Court has since clarified, however, that prisoners who allege denial of access to the courts must show actual injury as a constitutional prerequisite.  <u>Lewis v. Casey</u>, 518 U.S. 343, 351(1996).   Examples of "actual injury" for prospective or existing litigation include missing a filing deadline or being prevented from presenting a claim.  <u>Id</u>. at 348.  Therefore, if the plaintiff relies on <u>Bounds</u> and <u>Casey</u>, he is going to have to demonstrate that DCCC officials caused him "actual injury" by hindering his efforts to pursue a claim or defense.   <u>Id</u>. at 348-51, 354-55.

**Free Exercise Claim**

As the Eighth Circuit pointed out, the plaintiff's third cause of action will turn on factors such as whether his denomination constitutes a "religion" for the purposes of First Amendment protection and whether his belief regarding the consumption of fruits and nuts is a sincerely held belief based on a teaching of the religion (filing no. 8 at 3-4).  Therefore, in his Amended Complaint, the plaintiff may wish to respond to those issues in advance of likely Rule 12(b) motions.

**Service of Process**

Because the Eighth Circuit has directed this court to proceed with service of process, I will do so before the plaintiff clarifies whether he is asserting any claims on which relief may be granted.  However, as stated, the plaintiff shall have forty (40) days from the date of this Memorandum and Order to file an Amended Complaint in light of the issues discussed above.   Accordingly,

    IT IS ORDERED that:

    1.	The plaintiff is granted forty (40) days from the date of this Memorandum and Order to file an Amended Complaint.

    2.	The Clerk of Court shall send the plaintiff a total of four blank summons forms

for service of process upon defendants-Patton and Glaser in their individual and official capacities. The plaintiff shall complete the forms and, as soon as possible, send the completed summons forms back to the Clerk of Court for signature. The forms will then be returned to the plaintiff for service on the defendants.

3.  Fed. R. Civ. P. 4 requires service of a summons, together with a copy of the complaint, on a defendant within 120 days of filing the complaint. That deadline is hereby extended until 120 days from the date of this Order. Failure to obtain service on a defendant within 120 days of this Order may result in dismissal of this matter without further notice, as against that defendant. If no defendant has been served by the 120-day deadline, the case may be subject, without further notice, to dismissal without prejudice. The plaintiff shall serve a copy of the original complaint **or the Amended Complaint, if one has been filed with the court**, together with each summons.

4.  The plaintiff may serve the summons and complaint on a defendant by any method permitted under Fed. R. Civ. P. 4 , e.g., by certified mail, process server, Waiver of Service of Summons.   The court will not be involved.   The forms for waiver of service are published with the Federal Rules of Civil Procedure, which are available at any law library and on the court's web site at www.ned.uscourts.gov.

5.  After an appearance has been filed by a defendant, the plaintiff shall serve on the defendant or, if an appearance has been entered by counsel, upon such counsel, a copy of every future pleading, letter or other document submitted to the court. Parties usually serve copies of documents on other parties by first class mail.

6.  The plaintiff shall include with each document submitted to the court a "**Certificate of Service**" stating the date a true and correct copy of such document was mailed to the defendants or to the attorney of any represented defendant. **If the plaintiff does not include a Certificate of Service indicating that a copy of a communication to the court has been sent to the other parties to the case, the court will issue a Notice of Deficiency and might strike the plaintiff's communication from the record.**

7.  A defendant has twenty (20) days after receipt of a summons to answer or otherwise respond to a complaint.

8.  The parties are bound by the Federal Rules of Civil Procedure and by the

Local Rules of this court.

9.     The plaintiff shall keep the court informed of his current address at all times while this case is pending.  Failure to do so may result in dismissal.

10.    IMPORTANT NOTE:  **Any communication filed by the plaintiff with the court must bear the plaintiff's original signature.**

March 28, 2007.                    BY THE COURT:


s/ *Richard G. Kopf*
United States District Judge